# In the United States Court of Federal Claims

No. 12-902C
(Filed September 9, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| **DAIRYLAND POWER COOPERATIVE,** | * * * | Motion in limine, Spent Nuclear Fuel, Offset Costs, Incurred Costs, Res Judicata |
| Plaintiff, | * * |  |
| v. | * * |  |
| **THE UNITED STATES,** | * * |  |
| Defendant. | * * |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

Before the Court is a Motion *in limine* filed by Plaintiff Dairyland Power Cooperative ("Dairyland"). Dairyland seeks an order pursuant to Rule 7 of the Rules of the Court of Federal Claims ("RCFC") prohibiting Defendant, the United States, from arguing that Dairyland must deduct from its pending damages claim the nonbreach world cost of delivering spent fuel to the United States Department of Energy ("DOE") in 1998 or earlier. Dairyland further seeks, pursuant to RCFC 26(c), a protective order barring Defendant from seeking discovery into the costs Dairyland would have incurred in the nonbreach world to deliver spent fuel.

For the reasons set forth below, the Court hereby DENIES the Motion *in limine*.

### I.  Background

This case is one of a number of cases before the court of Federal Claims involving the ongoing breach of the Standard Contract between the DOE and nuclear utilities for the removal and disposal of spent nuclear fuel ("SNF"). The general facts of the case have been discussed at length in this Court's first round case for damages, *see Dairyland Power Coop. v. United States*, 90 Fed. Cl. 615 (Fed. Cl. 2009); thus the Court shall limit discussion only to the facts relevant to the present controversy.

Currently at issue is Dairyland's claim for second round damages, for the time period of 2007 to 2012. Dairyland seeks damages for, *inter alia,* the construction of dry cask storage at the La Crosse Boiling Water Reactor ("LACBWR"). After determining that such a project would be financially feasible, and in an effort to mitigate damages,

Dairyland removed the reactor pressure vessel ("RPV") from LACBWR and installed a specially fabricated cask loading pool, along with a temporary cask handling Crane. Mot. at 5.[1] This setup included a water system and water gate that would allow Dairyland to manipulate water levels to enable the movement of casks in and out of the loading pool and fuel assemblies. *Id.*

On November 22, 2013, Defendant served several requests for admissions and interrogatory requests on Dairyland, which now provide the basis for Dairyland's Motion. Dairyland specifically objects to Interrogatory requests 1-7 and 11, and requests for admission 1-7, which "seek to isolate the amount spent on a specified sub-part of Dairyland's dry cask storage project." Mot. at 6.[2] Dairyland indicated that it was unable to respond to these specific requests because Dairyland's accounting method was set up in such a way that all costs related to the dry cask storage project were accounted for using a single accounting code; thus, it would be unduly burdensome for Dairyland to retroactively reclassify every sub-category for the entire project.[3] To date, Dairyland has not substantively responded to these specific requests for admission and interrogatories.

The fundamental premise for the disagreement between the parties is that the government believes that at least some of the costs identified in its discovery requests would have also been incurred by Dairyland in the nonbreach world – a premise Dairyland disagrees with. In its Motion, Dairyland details what it believes would have been the process for SNF removal in the nonbreach world, and contrasts it with the steps it has undertaken in the breach world. Dairyland argues that the process of loading fuel in the nonbreach world for DOE collection would have been drastically different than the process that actually occurred when Dairyland loaded SNF into its newly constructed dry cask storage, and Dairyland is prepared to present expert testimony at the trial for damages to that effect. The government, on the other hand, is prepared to offer expert testimony to the contrary – that several of the costs that Dairyland now seeks to recover are costs that would have been incurred in the nonbreach world.

The government has indicated to Dairyland that it believes Dairyland to be obligated to break down these costs as part of its legal burden of identifying and deducting costs that would have been incurred in the nonbreach world. Mot. at 6. The parties disagree about the existence and extent of any obligation Dairyland has to

---

[1] At the time the Court made its ruling in the case for damages for the period of 1998-2006, Dairyland had begun the process of planning construction of dry cask storage and removing the RPV. The project had not been completed at that time. *See Dairyland,* 90 Fed. Cl. at 623.

[2] For example, Interrogatory No. 5 asks Dairyland to "[i]dentify the total amount claimed by Dairyland in its current claim for the purchase of damaged fuel cans, making sure to include all internal labor and vendor costs incurred." Mot. at Exhibit A. Request for Admission No. 1 asks Dairyland to "[a]dmit that the total vendor cost including the current claim for the cask seismic restraint inside the reactor building (including installation) is $28,039.09, consisting of the following vendor costs: a. Brand Scaffold Rental/Erection - $13,300.00; b. Craig R. Nelson Company - $14,739.09." *Id.*

[3] Dairyland notes that it "cannot query its accounting system for the information the government requests" and that instead, it "would need to manually search and review its accounting records and exercise significant subjective judgment in attempting to divide the dry cask storage project into the types of individual cost categories that the government seeks to create." Mot. at 7.

delineate and deduct from damages the amount of costs it would have incurred in the nonbreach world to deliver SNF to the government.

Dairyland now seeks a judicial order which, pursuant to RCFC 7[4], would prohibit the government from arguing that Dairyland would have incurred some of the loading costs in the nonbreach world that it now seeks compensation for. Dairyland also asks for a protective order to bar the government from requiring Dairyland to answer the outstanding discovery (namely, Defendant's First Set of Interrogatories number 1-7 and 11 and Defendant's First set of Request for Admissions numbers 1-7). Finally, Dairyland asks the Court for a protective order, pursuant to RCFC 26(c)[5], that would bar the government from seeking further discovery into the costs Dairyland would have incurred in the nonbreach world to deliver SNF to DOE.

## II.     Standard of Review

A motion *in limine* is "a recognized method under [RCFC] 16 and Fed. R. Civ. P. 16 for obtaining a pretrial order simplifying issues for trial." *White Mountain Apache Tribe of Az. v. United States*, 10 Cl. Ct. 115, 116 (1986). The basic purpose of a motion *in limine* is "'to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 302-03 (1996) (quoting *Baskett v. United States*, 2 Cl. Ct. 356, 367-68 (1983), aff'd, 790 F.2d 93 (Fed. Cir. 1986) (table)).

## III.    Discussion

Dairyland objects to the government's discovery requests for three reasons: (1) Dairyland argues that its nonbreach world fuel transfer costs have already been deducted from damages in the Round 1 case; (2) Dairyland argues that it is too late for the government to seek a deduction for 1998 costs; and (3) that consideration of a reduction of damages based on nonbreach world costs from 1998 or earlier is barred by *res judicata*. *See generally* Mot. For the reasons set forth below, the Court finds Dairyland's arguments unavailing.

### A. Dairyland's Nonbreach World Fuel Transfer Costs Have Not Been Deducted From Damages

Dairyland's first argument is that the government may not now seek to reduce loading costs from Dairyland's potential damages because, in the Round 1 case, Dairyland had already self-deducted those costs by not asking for them. Mot. at 9. By the terms of the Standard Contract, utilities are to be responsible for the cost of preparing and loading SNF for DOE to collect. *See* 10 C.F.R. § 961.11, art. IV.A.2(A). Because Dairyland deliberately did not ask for damages associated with the loading of SNF in its

---

[4] RCFC 7(b) addresses requests for court orders made by a party.
[5] RCFC 26(c) addresses the general requirements for the court to issue a protective order.

Round 1 case, it is argued that allowing for the reduction of loading costs in the present Round 2 case would amount to an impermissible double deduction. *Id.* at 10.

While appreciating the difficulty of attempting to prove a negative, the Court finds that there is nothing on the record to support Dairyland's contention that it deliberately did not seek loading costs in order to self-deduct these expenses it knew it was responsible for.  Rather, it is more likely that Dairyland did not seek internal labor costs associated with loading SNF in the Round 1 case because Dairyland had yet to incur any such costs.  Federal Circuit precedent is clear that utilities may only claim damages that they have actually incurred, and may not seek speculative future damages. *See Indiana Mich. Power Co. v. United States*, 422 F.3d 1369, 1376-78 (Fed. Cir. 2005); *see also Yankee Atomic Elec. Co. v. United States*, 536 F.3d. 1268, 1273 (Fed. Cir. 2008); *Energy Northwest v. United States*, 641 F.3d 1300, 1306 (Fed. Cir. 2011).

At the time of the Round 1 case, Dairyland could not have sought damages related to the loading of SNF into storage because it had not yet incurred that cost.  Dairyland's SNF now lies in the dry cask storage at LACBWR, but at the time of the previous trial, Dairyland had only recently begun the process of converting LACBWR into a storage facility.  Thus, no SNF had been loaded and no loading costs had yet been incurred by Dairyland.  Now that damages for the time period of 2007-2012 are before the Court, the conversion of LACBWR into dry cask storage is complete and the SNF has been loaded into storage.  Thus, costs associated with loading SNF have now been incurred and claims for those costs are timely, and Dairyland indeed seeks those costs.

The Court concludes that Dairyland has not already deducted damages for loading costs by not claiming them in the Round 1 case.  Any claim for damages for costs associated with the loading of SNF in the Round 1 case would have been untimely and improper.  Thus, the possibility of a reduction of loading cost damages in the instant case cannot result in a double-deduction.

### B.  The Government's Potential Objection to Loading Costs is Not Untimely

Dairyland's second argument is that the government cannot seek to reduce damages in the present claim period of damages (2007-2012) with costs that Dairyland would have incurred in the old claim period of damages (1998-2006) in the nonbreach world.  Dairyland relies on specific findings of fact by this Court in the Round 1 case, namely that Dairyland would have had all of its SNF collected by DOE by 1998 (in a nonbreach world in which an exchange existed allowing utilities to barter in order to move up in the collection line) or 2006 at the latest (in a nonbreach world in which the exchange did not exist or in which Dairyland was not able to move to the front of the collection queue).  *Dairyland*, 90 Fed. Cl. at 618.  Dairyland thus posits that the government's effort to reduce damages by nonbreach world loading costs amounts to an untimely offset.  Dairyland notes that "the government could have addressed the nonbreach world spent fuel transfer issue in Dairyland's first round damages case." Reply at 7.

4

Among a lengthy string of cites, Dairyland cites to *Carolina Power & Light Co.* for the proposition that the court "rejected the government's argument that a utility's damages should be reduced to account for costs the utility would have incurred in the nonbreach world to transfer spent fuel to DOE." Mot. at 13 *citing Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1277 (Fed. Cir. 2009). However, this case gives insight into why the government likely did not seek an offset during the Round 1 case for damages. In *Carolina Power*, the Court of Appeals affirmed the trial court's holding that the cost of loading casks for DOE was not properly classified as an avoided cost but should rather be classified as a deferred cost. *Id.* As the trial court noted, "[p]laintiffs, however, have not avoided the cost of loading DOE casks. The loading costs have merely been deferred. When DOE arrives to pick up Plaintiffs' spent nuclear fuel in the future, [plaintiff] will have to pay the loading costs Defendant now seeks to impose." *Carolina Power & Light Co. v. United States*, 82 Fed. Cl. 23, 52 (Fed. Cir. 2008). Indeed, the citations provided by Dairyland affirm the position that the government cannot argue for an offset related to cask loading costs because such a cost has merely been deferred to a future date and that applying an offset now would lead to a situation where a utility has effectively paid twice. *See Portland Gen. Elec. Co. v. United States*, 107 Fed. Cl. 633, 654 (Fed. Cl. 2012); *Ariz. Pub. Serv. Co. v. United States*, 93 Fed. Cl. 384, 398 (Fed. Cl. 2010); *Wis. Elec. Power Co. v. United States*, 90 Fed. Cl. 714, 791-94 (Fed. Cl. 2009).

Plaintiff also cites to *Sacramento Mun. Util. Dist. v. United States*, 566 Fed. Appx. 985 (Fed. Cir. 2014) ("*SMUD*") for the proposition that offsets should be determined solely with respect to the present phase of litigation. Mot. at 12. In *SMUD*, the trial court attempted to enter a combined judgment for both the round one and round two cases for damages, effectively reducing the plaintiff utility's judgment in the round one case due to offsets in the round two case. *Id.* at 993. The Court of Appeals reversed this determination, noting that "[a]t best, this result violates the settled principle that a breaching party should never be placed in a better position as a result of its breach" and that "[a]t worst, the decision to stay execution of a prior award pending a determination of any offset available in the future creates a perverse incentive for the Department to stall spending SNF actions with the hope of eviscerating past claims with future offsets." *Id.* at 996. Thus, the court held that past awards of damages could not be impacted by present offsets.

Such a situation is not what the Court is presently faced with however. In the instant case, the government is not seeking an offset for loading costs that have been avoided by Dairyland, but rather is directly challenging certain cask loading costs as ones that would have been incurred in the nonbreach world. The Federal Circuit has noted the distinction between these two arguments. *See Energy Northwest v. United States*, 641 F.3d 1300, 1306 (Fed. Cir. 2011) (noting the difference between avoided costs and incurred costs as a "separate, if superficially similar, issue.").

The Court finds that this case is substantially similar to the one presented in *Energy Northwest v. United States*, 115 Fed. Cl. 69 (Fed. Cl. 2014). In *Energy Northwest*, the plaintiff utility sought damages for costs related to cask loading in its

5

constructed dry cask storage project. Like Dairyland, the plaintiff sought to mitigate damages due to DOE's breach of the Standard Contract by constructing and maintaining its own dry cask storage. *Id.* at 72. The plaintiff argued that "as a matter of law, cask loading costs must be subjected to an 'avoided' rather than 'incurred" cost analysis and that "the government seeks nothing more than the very same offset that the Federal Circuit rejected in *Carolina Power & Light Co. v. United States*." *Id.* at 74 (internal quotations and citations omitted). The court rejected plaintiff's motion for summary judgment on the issue of cask loading costs because plaintiff "ha[d] not presented any model of its own as to what its costs would have been to load casks for shipment (as opposed to for storage)" and noted that "[i]t seems clear that the court of appeals' decision in [*Energy Northwest*] imposes this requirement on utilities with respect to all of their incurred costs." *Id.* at 75.

The court thus held that "to establish its entitlement to damages for cask loading costs, [a plaintiff] must satisfy its burden of demonstrating that such costs were incurred because of the breach" and that to make this demonstration, a plaintiff must "submit a hypothetical model establishing what its costs would have been in the absence of the breach." *Id.* at 73 (citing *Energy Northwest,* 641 F.3d at 1307; *Indiana Mich. Power*, 422 F.3d at 1373; *Yankee Atomic*, 536 F.3d at 1273; *Vermont Yankee Nuclear Power Corp. v. Entergy Nuclear Vt. Yankee, LLC*, 683 F.3d 1330, 1349-50 (Fed. Cir. 2012).

There is nothing in the facts of the instant case that lead the Court to believe it should reach a conclusion contrary to the holding in *Energy Northwest*. The government is not seeking an offset; it is prepared to argue that actual costs incurred by Dairyland related to cask loading would also have been incurred in the nonbreach world, and thus should be deducted from the award of damages. This is an entirely distinct legal issue from the one of avoided costs that was struck down by *Carolina Power* and its progeny. Additionally, unlike in *SMUD*, there is no timing issue – because Dairyland has incurred loading costs in the round two claims period, this is the only opportunity the government will have to contest these costs. The Court, therefore, will not prohibit the government from arguing at trial that Dairyland should reduce its damages by its nonbreach world cost of loading SNF to DOE.

### C. The Doctrine of *Res Judicata* is Inapplicable To The Instant Case

Dairyland's final argument is that reduction of damages based on nonbreach world costs from time period of 1998-2006 is barred by the doctrine of *res judicata*. Mot. at 16. Dairyland avers that because its Round 1 damages for the period of 1998-2006 have been finalized by this Court and reviewed by the Court of Appeals for the Federal Circuit, that amount cannot be disturbed by the government now seeking to opine on loading costs that would have been incurred in the nonbreach world during that time period. *Id.* at 18. Dairyland believes that it's "round one claim will never be truly final if the government may, at its leisure, seek to reopen the recoverability of costs that may have been incurred in the nonbreach world in a period not presently under litigation." *Id.*

Dairyland appears to be arguing for the "issue preclusion" half of the *res judicata* doctrine, commonly referred to as collateral estoppel. A claim is barred by collateral estoppel when "(1) the issues in the prior proceeding are identical to the issues in the present proceeding; (2) those issues were actually litigated in the prior proceeding; (3) the resolution of those issues was necessary to the judgment in the prior proceeding; (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *Ammex, Inc. v. United States*, 384 F.3d 1368, 1371 (Fed. Cir. 2004).

The Court finds that *res judicata* is inapplicable to the instant case because the issue of whether Dairyland's loading costs can be offset by the loading costs it would have incurred in the nonbreach world has yet to be considered. For all the reasons discussed *supra* in this order, the Court has determined that the government may properly challenge the costs Dairyland seeks to recover by arguing that Dairyland would have incurred a portion of those costs in the nonbreach world. Dairyland has not previously tried to recover costs associated with loading SNF and the Court has never made a determination as to what costs Dairyland would have incurred related to loading in the nonbreach world. Thus, this issue is new before the Court and cannot be barred by *res judicata*.

Dairyland attempts to argue that the government may not now seek to reduce loading costs because it "was well aware throughout the entirety of Dairyland's Round 1 case that Dairyland was planning to move LACBWR's spent fuel to dry storage, whether onsite or at PFS" and that the government, at that time "did not challenge Dairyland's claim for roughly $1 million of planning costs related to the dry cask storage project incurred during the claim period covered by Dairyland's Round 1 claim." Mot. at 19. This argument must fail because it once again fails to account for the timing issue. The government did not substantively challenge Dairyland's claim for planning costs related to the dry cask storage project because it would have been illogical to do so – Dairyland incurred these costs directly as a result of needing to create a contingency plan to compensate for DOE's ongoing breach. Such costs are exactly the type that a utility could be expected to reasonably recover in these nuclear fuel cases as there is little doubt that Dairyland would not have constructed dry cask storage in the nonbreach world.

However, just because the government did not contest a relatively small amount of planning costs in the Round 1 case does not mean that it is now barred from contesting any costs related to the project, especially when those costs were incurred in the Round 2 claim period of 2007-2012. Indeed, because Dairyland had yet to incur any costs associated with loading in the 1998-2006 claims period, the government has not had the opportunity to seek a deduction of those costs based upon costs it believes Dairyland would have incurred in the nonbreach world. Accordingly, the doctrine of *res judicata* is inapplicable in the instant case.

**IV.   CONCLUSION**

For all the reasons set forth above, the Court concludes that it is not improper for the government to argue, in this second round case for damages, that some of the costs that Dairyland seeks in relation to the loading and storage of SNF would have been incurred in the nonbreach world.  Accordingly, Dairyland's request for a judicial order pursuant to RCFC 7 and protective order pursuant to RCFC 26(c) is DENIED.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge