# In the United States Court of Federal Claims

No. 12-902C
FOR PUBLICATION
(Filed: September 28, 2016)

```
*************************************
                                    *
DAIRYLAND POWER                     *
COOPERATIVE,                        *
                                    *
            Plaintiff,              *   Motion in Limine; Causation;
                                    *   System Fuels, Inc. v. United States, 120 Fed Cl.
      v.                            *   635 (2015); System Fuels, Inc. v. United States,
                                    *   120 Fed. Cl. 737 (2015)
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*************************************
```

### OPINION AND ORDER

This order concerns two motions *in limine*: (1) Dairyland's Motion To Implement *System Fuels*, filed on August 3, 2016, and (2) Dairyland's Motion *in Limine* To Exclude Evidence and Argument Regarding Causation In Evaluating Reasonableness of Dairyland's Mitigation Efforts ("Dairyland's Motion on Causation"), filed on July 20, 2016. Briefing was completed for both motions on September 1, 2016. As explained below, the Court does not accept Dairyland's view of how *System Fuels* affects this case, and the Court denies Dairyland's Motion on Causation.

**I.      System Fuels**

*System Fuels* concerned damages for partial breach of the U.S. government's contractual obligation owed to utilities to pick up spent nuclear fuel (SNF) and store it. *System Fuels, Inc. v. United States*, 818 F.3d 1302, 1303 (Fed. Cir. 2016). The appeal involved two Court of Federal Claims cases: *System Fuels, Inc. v. United States*, 120 Fed Cl. 635 (2015) ("Grand Gulf") and *System Fuels, Inc. v. United States*, 120 Fed. Cl. 737 (2015) ("Arkansas Nuclear One"). The issue in both cases was a reduction of damages due to the costs incurred by System Fuels in loading SNF into storage casks for dry storage in Independent Fuel Storage Installations ("ISFSIs"), the construction of which were the result of the government's breach. *See Sys. Fuels*, 818 F.3d at 1304. The Federal Circuit noted that the loading process included the loading of the SNF into canisters before it was loaded into the dry storage casks. *Id.* at 1305-06.

In both cases, the trial courts reduced the damages to account for the fact that System Fuels would have had costs to load SNF into different Department of Energy ("DOE")

1

transportation casks had the government performed. *Grand Gulf*, 120 Fed. Cl. at 661-662; *Arkansas Nuclear One*, 120 Fed. Cl. at 750-52. The damages reductions in both cases were made despite the fact that the courts had found that neither the canisters nor the dry storage casks were acceptable for DOE transportation under the contract or current regulations; thus, the SNF would have to be reloaded for DOE pick-up. In reversing the trial courts' reductions in damages, the Federal Circuit stated:

> [T]he costs of loading future transportation casks, or the difference between the costs of loading these storage casks and loading transportation casks, are irrelevant to System Fuels' entitlement to the expenses it incurred for loading these *storage* casks. These are expenses incurred entirely for storage due to the government's breach. And because, as admitted by the government, these storage casks cannot be used for transportation under the Standard Contracts, System Fuels will be required, if and when the government begins to comply, as both Court of Federal Claims decisions acknowledge, to unload the spent nuclear fuel from these storage casks and reload it into suitable transportation casks provided by the government. As we have explained, "the government cannot prematurely claim a payment that has not become due."

*Sys. Fuels*, 818 F.3d at 1307 (quoting *Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1277 (Fed. Cir. 2009)).

## II. The Impact of *System Fuels*: The Arguments of the Parties

For Dairyland, *System Fuels* stands for the proposition that "there may be no deduction in present cases for the nonbreach cost of fuel loading unless the very same (not similar) effort cost would have been undertaken in both worlds." ECF No. 150 at 2. This interpretation is more modest than its position in its opening brief that "*System Fuels* provides that the government is not entitled to any deduction for the costs to load fuel in the nonbreach world." ECF No. 129 at 2. From its opening brief, this Court had the impression that the expenses of the entire project of loading SNF into casks for storage in the ISFSI would be immune from challenge by the government. Now it seems that Dairyland is asking the Court first to look at the breakdown of tasks (or "efforts") and the cost attached to each and determine which of these tasks would not be the same tasks in the nonbreach world. Then, the Court should grant full recovery for the amounts assigned to those tasks if the amounts were reasonably accurate.

The government, by contrast, argues that just the recovery for costs associated with actually loading the dry storage casks (called "labor costs" by the government) is immune from challenge, while the other costs ("nonlabor costs") of dry storage are not.[1] The government resists the approach of breaking down the costs of the dry storage project into tasks and comparing these tasks to the tasks to be performed in the nonbreach world. For the government, the Court is comparing costs—not tasks—in the breach and nonbreach worlds.

---

[1] Indeed, the government concedes the $1,881,218 in costs for preparation and packaging of SNF. ECF No. 140 at 5-6.

## III.  The Decisional Context of *System Fuels*

The parties agree that *System Fuels* must be interpreted to harmonize with certain significant prior Federal Circuit decisions, namely, *Carolina Power & Light Co. v. United States*, 573 F.3d 1271 (Fed. Cir. 2009), *Energy Northwest v. United States*, 641 F.3d 1300 (Fed. Cir. 2011), and *Vermont Yankee Nuclear Power Corp. v. United States*, 683 F.3d 1330 (Fed. Cir. 2012).  In *Carolina Power*, most relevant is the court's discussion of loading costs; in *Energy Northwest*, most relevant is the court's discussion of plant modification costs; and in *Vermont Yankee*, most relevant is the court's discussion of fuel characterization[2] costs.

In *Carolina Power*, the trial court declined to deduct from the plaintiff's damages the cost of loading DOE transportation casks.  The government argued that this was an avoided cost, but the Federal Circuit disagreed: "Plaintiffs have not avoided the costs of loading. Rather, they have merely deferred these costs."  573 F.3d at 1277.  In other words, the cost of loading into DOE transportation casks would have to be borne by the plaintiff once DOE showed up to pick up the SNF.  The loading into DOE transportation casks was not an expense that the plaintiff incurred in the breach world.

In its discussion of plaintiff's claim for recovery of plant modification costs, the Federal Circuit in *Energy Northwest* had the occasion to distinguish between proving causation and proving an offset.  The plant modification costs were claimed as part of the costs of building an ISFSI. *See Energy Northwest*, 641 F.3d at 1307-08.  The trial court had found that the building of the ISFSI was a reasonable and foreseeable response to the government's breach, and the government did not appeal this finding.  *Id.* at 1304-05.  The trial court treated the government's challenge to recovery of plant modification costs as a claim for an offset, analyzing the argument under the avoided-cost standard of *Carolina Power*.  *Id.*  The Federal Circuit held that this was improper.  Despite the trial court's finding that building the ISFSI was a proper act of mitigation, the court held that this finding "does not change Energy Northwest's obligation to prove the recoverable costs associated with that construction. If a cost would have been incurred even in the non-breach world, it is not recoverable." *Id.* at 1307 (citing *Ind. Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2011).  The court explained further:

> These cases address separate aspects of the damages analysis. *Yankee Atomic* shows the importance of proving causation by comparing a hypothetical "but for" world to a plaintiff's actual costs. Under its rule, a plaintiff must prove the extent to which his incurred costs differ from the costs he would have incurred in the non-breach world. *Carolina Power* addresses the separate circumstance where a breaching party seeks to offset an award by proving

---

[2] Spent fuel characterization is "the process of documenting the physical and nuclear characteristics of spent fuel assemblies. All spent fuel assemblies must undergo characterization prior to storage." *Entergy Nuclear Vermont Yankee, LLC v. United States*, 95 Fed. Cl. 160, 191 (2010), *aff'd in part, rev'd in part and remanded sub nom*. *Vermont Yankee Nuclear Power Corp. v. Entergy Nuclear Vermont Yankee, LLC*, 683 F.3d 1330 (Fed. Cir. 2012) (citation omitted).

>that the non-breaching party has achieved some cost savings because the breach permitted it to avoid—not just defer—some aspect of performance.

*Id.* at 1306 (citations omitted).

In *Vermont Yankee*, the trial court awarded plaintiff the mitigation costs associated with fuel characterization before storing the SNF in dry casks. 683 F.3d 1330. The government had argued that fuel characterization was required before DOE pick-up; thus, the cost of fuel characterization should be removed from plaintiff's claim. The trial court, however, found that it was uncertain what characterization processes plaintiff would have to perform for DOE pick-up, and it refused to speculate. *Id.* at 1350. Because the government had to bear the burden of uncertainty, the court concluded (effectively) that this cost had been deferred, not avoided. In reversing the award of costs for characterization, the Federal Circuit stated:

>However, ENVY [Entergy Nuclear Vermont Yankee] has not established the likelihood that DOE will require ENVY to incur further characterization costs upon performance. . . . Further, ENVY has failed to "submit a hypothetical model" comparing what its costs would be in breach versus non-breach worlds in the event that DOE does eventually require further characterization.

*Id.*

This Court notes that in *Energy Northwest* and in *Vermont Yankee*, the Federal Circuit required that the plaintiff create a model of the costs incurred by the plaintiff in the breach and nonbreach worlds so that a court may determine causation. Indeed, in *Energy Northwest*, the court distinguishes between (1) creating a model of the breach and nonbreach world costs and (2) arguing an offset to mitigation, calling them different aspects of damages analysis. In *Carolina Power*, a distinction between these two aspects did not come up. Thus, according to *Energy Northwest* and *Vermont Yankee*, it is a prerequisite for recovery that an SNF plaintiff present a model of costs that it incurred in the breach world and the nonbreach world. The burden of proof is on the plaintiff for this aspect of the case.

### IV.   Harmonization of the Cases

In each of the cases just discussed, the cost of interim storage arranged by the plaintiff was broken down into various cost items, namely, loading casks for dry storage, plant modification costs, and fuel characterization. Loading costs was also a separate cost item in *System Fuels*. In none of the cases was plaintiff's claim for interim storage presented only in a lump sum. In none of the cases was it argued that the government could not challenge a cost item of the plaintiff's interim storage mitigation effort by way of offset. In none of the cases did the courts—or the parties for that matter—analyze the question of offsets through "tasks." In all of the cases, in the context of mitigation, the initial question was whether plaintiff was entitled to a cost item, and then an inquiry was made into whether the cost was avoided or deferred. The only time that something like a task comes into the analysis is when an inquiry is made as to whether a particular action (to which a cost has been attached) would have been duplicated or obviated. The distinction between cost item and task in this context seems not to be a difference.

4

*System Fuels* is really just an application of *Carolina Power*. Given these cases, it can be safely said that the cost of loading SNF into dry storage casks is recoverable once it is established that in the nonbreach world a DOE transportation cask would be required so that the SNF would have to be reloaded. The same can be said for fuel characterization; namely, that if characterization has to be done again, then the cost is recoverable.[3]

In sum, the impact of *System Fuels* on this case is closer to the government's view than Dairyland's. Therefore, the extent of the impact of *System Fuels* is limited to the government's concession in its brief, namely, $1,881,218 for preparation and packaging. This concession presumably is based upon the acceptance by the government of the fact that in this case, as in *System* Fuels, Dairyland will have to reload the SNF into the DOE-specified transportation casks for pick-up. As for the other cost items, the government may contest those that it believes would be costs avoided, not deferred in the context of mitigation damages, such as fuel characterization and plant modification. Dairyland, of course, is free to argue the contrary, and, in particular, may argue the reloading of the SNF into the DOE casks would require recharacterization of the fuel, which would preclude a reduction in its damages by the cost of the characterization that Dairyland incurred in the process of dry cask storage loading.

## V.  Determination of Nonbreach World Costs

In addition to determining the impact of *System Fuels* on the case at bar, Dairyland moves the Court to determine Dairyland's nonbreach world costs. Pl.'s Mot. 6. As the government has commented, Def. Resp. 7-8, such a request seems odd in the context of Dairyland's reading of *System Fuels* to focus on a comparison of "tasks," rather than costs in comparing the breach and nonbreach worlds. This Court has already decided (above) that Dairyland is required to present a model of its costs in the breach world and the nonbreach world; therefore, the Court will be in a position to determine at least those nonbreach world costs that are relevant to this case. This should be helpful to Dairyland for future litigation. The Court, declines, however, Dairyland's invitation to determine nonbreach world costs in isolation. As the government has argued, such a determination is not ripe and would constitute an advisory opinion.

## VI.  Dairyland's Motion on Causation

In another motion in limine, Dairyland argues that it would be improper for the government to challenge cost items in Dairyland's mitigation efforts from the standpoint of causation. In theory, Dairyland is correct insofar as it focuses on the aspect of litigation where mitigation costs items have been justified as stemming from the breach, and the defendant is in the posture of arguing the reasonableness of the mitigation costs. But Dairyland is incorrect insofar as it is arguing that the government is precluded at all from proving that various cost items in Dairyland's mitigation efforts were not caused by the breach. As this Court has noted above, *Energy Northwest* sets out the difference between proving causation and questioning

---

[3] This Court brings up the issue of the cost of fuel characterization because it played a significant role in the briefs concerning the impact of *System Fuels* on this case. The court wonders why, since the term is never used in the *System Fuels* Federal Circuit opinion.

mitigation costs items. To repeat: "[A] plaintiff must prove the extent to which his incurred costs differ from the costs he would have incurred in the non-breach world." *Energy Northwest*, 641 F.3d at 1306. And in *Vermont Yankee*, the court noted: "ENVY has failed to 'submit a hypothetical model' comparing what its costs would be in breach versus non-breach worlds in the event that DOE does eventually require further characterization." 683 F.3d at 1350. *Energy Northwest* and *Vermont Yankee* teach that the plaintiff has the burden in proving that every cost item for which it wants recovery was caused by the breach. This includes costs that are classified by the plaintiff as mitigation. This is the first aspect of damages analysis. In the second aspect, the defendant has the burden of proving that the costs that the plaintiff has identified as mitigation were unreasonably incurred.

### VII. Summary

#### A. System Fuels

The government has conceded the amount of $1,881,218 for preparation and packaging of SNF. All other cost items in Dairyland's damages claim may be contested by the government. This Court will not determine all nonbreach world costs that would have been incurred by Dairyland but only those related to the damages claimed by Dairyland in this case.

#### B. Causation

As per *Energy Northwest*, Dairyland must "prov[e] causation by comparing a hypothetical 'but for' world to [Dairyland's] actual costs." 641 F.3d at 1306. This goes for all cost items of Dairyland's damages claims, including those that Dairyland claims as cost items of mitigation. The government may challenge, by evidence and argument, any of the cost items that Dairyland claims as damages on the basis that a cost item was not caused by the breach, including cost items claimed by Dairyland as mitigation. Dairyland need not address the cost item of Preparation and Packaging of SNF that the government had conceded. (See above.) In addition, the government may challenge any of those cost items that Dairyland has identified as mitigation on the basis that a cost item was unreasonable. For this aspect of the case, the government bears the burden of proof.

The Court notes that this order applies to any cost identified by either party in this case as a component of Dairyland's damages claim.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge